Matter of Ferretti v New York State Div. of Criminal Justice Servs. (2025 NY Slip Op 06000)

Matter of Ferretti v New York State Div. of Criminal Justice Servs.

2025 NY Slip Op 06000

Decided on October 30, 2025

Appellate Division, Third Department

Clark, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 30, 2025

CV-24-0739

[*1]In the Matter of Benjamin Ferretti, Appellant,
v
New York State Division of Criminal Justice Services et al., Respondents.

Calendar Date:September 11, 2025

Before: Clark, J.P., Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ.

Harding Mazzotti, LLP, Albany (Kelly A. Magnuson of counsel), for appellant.
Letitia James, Attorney General, Albany (Beezly J. Kiernan of counsel), for New York State Division of Criminal Justice Services, respondent.
Johnson & Laws, LLC, Clifton Park (Olivia G. Reinhardt of counsel), for Town of Glenville and others, respondents.

Clark, J.P.
Appeal from a judgment of the Supreme Court (Laura Jordan, J.), entered March 14, 2024 in Albany County, which, among other things, dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Division of Criminal Justice Services invalidating petitioner's basic training certificate.
In April 2022, petitioner — then a police officer with respondent Glenville Police Department (hereinafter GPD) — was served with a notice of discipline charging him with misconduct in the course of his official duties. Petitioner grieved the charges under the applicable collective bargaining agreement and requested a hearing before an arbitrator. In lieu of the hearing, petitioner agreed to resolve the matter through a consent award under which he would serve a 120-day suspension, without pay, and then be "reinstated full time and in good standing, subject to the [P]olice Chief's discretion to direct an alternate assignment." As a condition of the consent award, petitioner waived his right to a hearing on the charges.
After serving his suspension, petitioner returned to work in a remote capacity on August 8, 2022. The Police Chief placed petitioner on an alternative assignment at that time. On August 31, 2022, petitioner resigned from GPD, advising that he had "decided to explore other opportunities in law enforcement in lieu of continuing the current alternative assignment." Later that day, the Police Chief sent a department-wide email notifying GPD employees of petitioner's resignation and wishing him "success in his future endeavors." On September 8, 2022, in accordance with statutory obligations, the Police Chief notified respondent Division of Criminal Justice Services (hereinafter DCJS) that petitioner's employment with GPD had ended by a standard resignation (see Executive Law § 845 [2] [b]; 9 NYCRR 6056.4 [d] [2]).
In January 2023, the Police Chief emailed DCJS' legal department to inquire about the process of revoking petitioner's Police Officer Basic Training Certification (see General Municipal Law § 209-q [1] [b-1]). He followed up with a letter in February 2023 advising that he had improperly characterized petitioner's separation from employment as a standard resignation and requested that petitioner's record be amended to reflect a removal "for cause" under 9 NYCRR 6056.2 (h).
In March 2023, DCJS amended petitioner's record to reflect that he was removed "for cause" and notified petitioner that his basic training certification had been permanently invalidated. Petitioner sought administrative review of that determination, arguing that the "for cause" designation was based upon inaccurate information since his resignation from GPD occurred after the disciplinary matter had been fully resolved and after he had been reinstated on a full-time basis in good standing. Petitioner submitted a copy of the consent award, along with other documentation, in support of such assertion.
DCJS reviewed the [*2]matter pursuant to the process set forth in 9 NYCRR 6056.7, which applies when it receives information indicating "a material inaccuracy in an employer's reporting of the reason an officer ceased to serve." During that process, the Police Chief sent a letter which claimed that, during the negotiation of the consent award, "it was determined that [petitioner] would resign as a [GPD] [o]fficer on August 31, 2022, rather than return to duty under an alternate assignment," representing that petitioner never returned to work upon the completion of his suspension and instead used accrued leave time until his resignation. He further explained that he began investigating the decertification process after he received information in January 2023 that petitioner had applied for employment with the Schenectady County Sheriff's Department, claiming that petitioner had agreed during the negotiation of the consent award that he would not seek employment in Schenectady County as a police officer.
In response to such assertions, petitioner provided DCJS with copies of his attendance report and pay stubs, which demonstrated that he worked remotely on 10 days between the period of August 8, 2022 and August 31, 2022, using accrued leave for the remaining days. He also submitted a copy of a department-wide email that the Police Chief sent to GPD employees on August 9, 2022 in which he advised that petitioner had "completed his disciplinary suspension" and was "now on full pay and benefits." Indeed, pay stubs submitted to DCJS during the administrative review process confirm that petitioner was paid by GPD during this period. Petitioner's counsel also wrote an email to DCJS on May 31, 2023 in which he raised a concern about possible retaliation by the Police Chief.
By letter dated July 13, 2023, DCJS notified petitioner that it had completed its review and that the Police Chief accurately reported his separation from employment as a removal for cause. Petitioner commenced this CPLR article 78 proceeding against respondent Town of Glenville, GPD, the Police Chief (hereinafter collectively referred to as the Glenville respondents) and DCJS challenging that determination as arbitrary and capricious.[FN1] He submitted various exhibits from the administrative record in support of his petition, as well as an affidavit in which he alleged that, during the negotiations in furtherance of the consent award, he was advised that his certification would remain intact if he proceeded with a consent award rather than a hearing on the charges and then subsequently resigned. Petitioner further averred that, although the Police Chief told him that he did not want him to work in Schenectady County, this was not a condition of the consent award.
In lieu of answering, the Glenville respondents moved to dismiss the petition as asserted against them, arguing, among other things, that they were not proper parties to the proceeding since they did not make the final and binding determination being [*3]challenged. DCJS answered and raised various legal objections. In a corresponding affidavit, a DCJS representative argued that petitioner's resignation met the definition of a "for cause" separation from service — which requires a showing that the resignation was "subsequent to and in connection with allegations of misconduct" (9 NYCRR 6056.2 [h]) — since he resigned as a result of being placed on an alternative assignment in connection with the consent award. In opposition, petitioner submitted, among other things, a copy of the applicable collective bargaining agreement, which stated that "reassignment[s] . . . shall not be made for the purpose of imposing discipline."
Upon considering the record, Supreme Court dismissed the petition against the Glenville respondents on the basis that they were improper parties. The court otherwise dismissed the petition on the merits, finding that DCJS' determination was not arbitrary and capricious insofar as the record demonstrated that petitioner resigned due to being placed on an alternative assignment, which, the court emphasized, was a disciplinary consequence of the misconduct allegations. Accordingly, the court determined that it was rational to view petitioner's resignation as a "for cause" removal under 9 NYCRR 6056.2 (h). Petitioner appeals.
Contrary to petitioner's contention, Supreme Court properly dismissed the petition against the Glenville respondents. The primary relief requested by petitioner is annulment of DCJS' determination and reinstatement of his basic training certification (compare Matter of Kitto v City of Albany, N.Y. Dept. of Police, 213 AD3d 1165, 1166 [3d Dept 2023]). Under 9 NYCRR 6056.7 (a), DCJS is the entity with the authority "to amend [an] inaccuracy" in a police officer's record and is the agency that issued the final and binding determination declining to do so (see Executive Law § 845 [3] [b]; General Municipal Law § 209-q [1] [b-1]). We are unpersuaded by petitioner's argument that the Glenville respondents are necessary parties because they "played a substantial role in the injury to petitioner[ ] or . . . were primarily responsible for" DCJS' determination (Matter of Coney Is. Preparatory Pub. Charter Sch. v New York State Educ. Dept., 241 AD3d 57, 62 [3d Dept 2025] [internal quotation marks, brackets and citations omitted]; see Matter of Bosco v McGuire, 111 AD3d 931, 933 [2d Dept 2013]). Although we recognize that the Police Chief's February 2023 "for cause" notification to DCJS "immediately" invalidated petitioner's basic training certification as of that date (9 NYCRR 6056.4 [e]), DCJS subsequently conducted a merits review of that determination under 9 NYCRR 6056.7, concluding that the "for cause" reporting was correct. In these circumstances, it was DCJS, not the Glenville respondents, who made the ultimate administrative determination that caused petitioner's injury.[FN2]
That said, under the particular circumstances of this case, we agree with petitioner that DCJS' [*4]determination was arbitrary and capricious. Where, as here, an administrative determination is made without a hearing, our review "is limited to whether the determination was arbitrary and capricious, lacked a rational basis or was affected by an error of law" (Matter of Coney Is. Preparatory Pub. Charter Sch. v New York State Educ. Dept., 241 AD3d at 60 [internal quotation marks and citations omitted]; see CPLR 7803 [3]; Matter of Kitto v City of Albany, N.Y. Dept. of Police, 213 AD3d at 1169). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009] [citation omitted]; accord Matter of LL 410 E. 78th St. LLC v Division of Hous. & Community Renewal, ___ NY3d ___, ___, 2025 NY Slip Op 01672, *3 [Mar. 20, 2025]).
"As a general rule, courts must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise" (Matter of Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 174 [2019] [internal quotation marks and citations omitted]). "Thus, an agency's construction of its regulations if not irrational or unreasonable, should be upheld" (id. [internal quotation marks and citations omitted]).
Pertinent here, a police officer's basic training certification "may be permanently invalidated upon an officer's removal for cause" (General Municipal Law § 209-q [1] [b-1]; see 9 NYCRR 6056.4 [f]). "Removal for cause" means, in relevant part, "an interruption in service" by reason of a resignation "subsequent to and in connection with allegations of misconduct as defined in paragraph (1) of this subdivision which are known or should be known to the employer or any officer or employee of the employer agency or is being investigated by another agency or entity" (9 NYCRR 6056.2 [h] [2] [b] [emphasis added]).[FN3]
In its brief on appeal, DCJS states that it "interprets this regulation as requiring a causal nexus between the allegations of misconduct and the officer's subsequent separation from service." Although that is a facially rational interpretation of the regulation, DCJS' determination that that is what occurred here lacks a sound basis in reason and disregards the facts (see Matter of Murphy v New York State Div. of Hous. & Community Renewal, 21 NY3d 649, 654-655 [2013]; Matter of Merrick Auto Serv., Inc. v Grannis, 82 AD3d 895, 896 [2d Dept 2011]; see generally Matter of LL 410 E. 78th St. LLC v Division of Hous. & Community Renewal, ___ NY3d at ___, 2025 NY Slip Op 01672, *3 [even if a regulation gives an agency broad discretion, "the agency must exercise its power rationally"]). Indeed, during the review process, DCJS had before it a copy of the consent award, which clearly stated that petitioner would be reinstated in good standing upon serving his suspension. Although the Police Chief claimed that petitioner never returned to work after the suspension period was over, petitioner submitted documentary evidence [*5]demonstrating the inaccuracy of that representation. Moreover, DCJS knew that the Police Chief had characterized petitioner's separation from employment as a "standard resignation" in September 2022 and that the consent award did not contain any provision precluding petitioner from seeking employment with the Schenectady County Sheriff's Department, thereby raising a question as to the sincerity of the Police Chief's representation, as well as his subsequent "for cause" report. In these circumstances, it should have been clear to DCJS that the misconduct allegations were fully resolved upon petitioner serving his suspension and, therefore, the Police Chief's subsequent reporting that petitioner resigned "in connection with allegations of misconduct" was materially inaccurate.
DCJS argues that, regardless of whether the misconduct charges were pending at the time of petitioner's resignation, it still rationally determined that petitioner resigned "in connection with allegations of misconduct" since he retired only 10 days after the suspension period was over due to being placed on an alternative assignment, which was a consequence of the consent award resolving the charges.[FN4] DCJS' position that this constitutes a "for cause" separation from employment within the meaning of 9 NYCRR 6056.2 (h) lacks a sound basis in reason, as it would permit a police department to claim that an officer resigned "for cause" any time a resignation was part and parcel to a disciplinary consequence — even if charges had been fully resolved years prior and even if the officer worked for several more years before retiring. DCJS' position, if accepted, would also render the consent award effectively meaningless — a troubling prospect given that petitioner waived his right to a hearing on the misconduct charges in exchange for resolving the matter in a manner that would allow him to be reinstated in good standing, without any provision in the consent award notifying him that his basic training certification could be revoked if he resigned. DCJS also represents that its determination was based, in part, on the fact that the Police Chief advised that, during the disciplinary arbitration, petitioner agreed to resign rather than return to duty under an alternate assignment. However, that is not reflected in the consent award. For all the foregoing reasons, we conclude that DCJS' determination is arbitrary and capricious (see Matter of Murphy v New York State Div. of Hous. & Community Renewal, 21 NY3d at 652; Matter of Bruemmer v Vecchio, 93 AD2d 863, 863 [2d Dept 1983]).
The parties' remaining contentions, to the extent not specifically addressed, have been considered and found lacking in merit.
Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed the petition against respondent Division of Criminal Justice Services; petition granted to the extent of annulling [*6]respondent Division of Criminal Justice Services' July 13, 2023 determination; matter remitted to the Division of Criminal Justice Services for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The petition was originally filed in Schenectady County, but was subsequently transferred, on consent of the parties, to Albany County (see CPLR 7804 [b]; CPLR 506 [b]).

Footnote 2: Insofar as the parties charted a summary judgment course, we decline to apply the liberal pleading standard typically used to analyze pre-answer motions to dismiss under CPLR 3211 (a) (7) (see Matter of Kitto v City of Albany, N.Y. Dept. of Police, 213 AD3d at 1169). In any event, even applying that standard, we conclude that Supreme Court properly dismissed the petition as asserted against the Glenville respondents.
Footnote 3: There is no dispute that the notice of discipline contained allegations that, if established, would constitute misconduct within the meaning of this section.

Footnote 4: Prior to October 16, 2021, a removal for cause meant, in pertinent part, a "removal for incompetence or misconduct" by virtue of an employee's resignation "while a disciplinary process has commenced . . . which may result in removal" (9 NYCRR 6056.2 former [g]). In Matter of Kitto v City of Albany, N.Y. Dept. of Police (213 AD3d at 1170), this Court impliedly concluded that, for a resignation to constitute a removal for cause under the prior definition, it must have occurred while misconduct charges were still pending (see also Matter of Aufiero v New York State Div. of Criminal Justice Servs., 173 AD3d 1320, 1320 [3d Dept 2019], lv denied 34 NY3d 912 [2020]). We recognize that the amended definition uses broader language, but conclude that DCJS' determination, on these facts, is not rational.